IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROOSEVELT SANDERS, | ) |
| Petitioner, | ) Case No. 7:09CV00026 |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| FEDERAL BUREAU OF PRISONS, | ) By: Glen E. Conrad |
| | ) United States District Judge |
| Respondent. | ) |

Petitioner Roosevelt Sanders, an inmate currently incarcerated at the United States Penitentiary in Jonesville, Virginia ("USP Lee"), brings this pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241.[1] In his petition, Sanders argues that he should be granted 533 days of presentence credit and fourteen and a half months post-sentence credit toward his federal sentence for time served in state prison. Respondent filed a motion to dismiss, and Sanders responded,[2] making this action ripe for the court's consideration. Sanders has also filed a motion to expedite the court's review of his petition. Upon review of the record, the court grants the motion to expedite, but finds that the petition must be dismissed.

## Background

South Carolina state authorities arrested Roosevelt Sanders on August 3, 1994, on state drug charges. A week later, federal authorities adopted the state charges for federal prosecution on a charge of possession with intent to distribute cocaine base. Sanders is currently serving the

---

[1] Because Sanders is incarcerated within the territorial jurisdiction of this court and it is undisputed that he has exhausted administrative remedies, his § 2241 petition is properly before the court. See United States v. Wilson, 503 U.S. 329, 335 (1992).

[2] The motion to dismiss was filed on April 7, 2009, and the court issued a notice, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), on April 8, 2009. The next day, Sanders filed a motion requiring the respondent to serve him with a copy of the motion to dismiss. Counsel for the respondent properly certified that he had mailed Sanders a copy of the motion. Moreover, on April 24, 2009, Sanders submitted a detailed response to the motion to dismiss, demonstrating that he had received a copy of it. Therefore, the court will dismiss as moot Sanders' motion requesting a copy of respondent's motion.

sentence he ultimately received for this federal drug offense. Federal authorities arrested Sanders on August 8, 1994, and released him on bond on August 11, 1994. When he failed to appear for a court date on the federal charges, a bench warrant was issued for his arrest. Ultimately, the court ordered that Sanders' bond was forfeited and that he was on fugitive status.

Nearly five years passed. On January 19, 1999, North Carolina state authorities arrested Sanders, under the alias of "Sean E. Dupree," for state drug offenses. He went to trial on these state charges, and on September 1, 1999, the North Carolina state court sentenced Sanders (a.k.a. Dupree) to serve 35-42 months imprisonment, concurrent to the federal sentence yet to be imposed. He received 225 days of prior custody credit against this sentence for the time he had served in a North Carolina jail between the date of his arrest and the date of sentencing.

Federal authorities located Sanders in North Carolina state custody, at the Mecklenburg County Jail, and arrested him on a federal warrant on September 14, 1999, for failure to appear on the federal charges from 1994. State officials released Sanders to the physical custody of the United States Marshals Service ("USMS") based on the arrest warrant. Sanders was then arraigned on the charges in the federal indictment in the United States District Court for the District of South Carolina. At that point, the federal judge realized that Sanders was serving an intervening North Carolina state sentence that was not completed; accordingly, the judge issued a writ of habeas corpus ad prosequendum on September 21, 1999, indicating that federal authorities had only borrowed Sanders from state authorities in order to bring him into court on the federal charges from 1994.[3] Sanders pleaded guilty to the federal charges on December 17,

---

[3] Petitioner's exhibits provide the factual details concerning his arrest on September 14, 1999. See Pet. Ex. M (BOP administrative remedy appeal response dated April 21, 2003, indicating that arrest on the federal warrant on September 14, 1999, was error, given the state's primary jurisdiction over Sanders, and that a writ of habeas corpus ad prosequendum issued on September 21, 1999, corrected that error); Pet. Ex. P (Letter from state court judge, dated September 23, 2003, indicating that the judge did not find a writ of habeas corpus ad prosequendum in the state court criminal file).
The government has not produced a copy of this writ of habeas corpus ad prosequendum in support of the motion to dismiss; the documentation presented consists of a printout from the USMS tracking system, which indicates that Sanders was in "RL-WHCAP" status on September 14, 1999. Govt. Exh. 1, Attach. 3.

1999, and was sentenced on April 2, 2001, to serve 135 months in prison.[4] On April 9, 2001, the Assistant United States Attorney ("AUSA") sent a memorandum to the United States Marshals Service ("USMS"), advising that Sanders could be returned to his place of incarceration. (Pet. Resp. Ex. 1, Attach. 14.) On April 18, 2001, the USMS returned Sanders to the Mecklenburg County Jail. Respondent asserts that in doing so, the USMS acted pursuant to the writ, so that Sanders continued serving his state sentence. On June 6, 2001, state authorities transferred Sanders from the jail to the North Carolina Department of Correction ("DOC").

Sanders was released from state custody in North Carolina to federal custody on June 25, 2002, pursuant to a detainer based on the federal judgment. The United States District Court for the District of South Carolina resentenced Sanders on March 13, 2008, reducing his sentence to 108 months.

The United States Bureau of Prisons ("BOP") computed Sanders' sentence as beginning on June 25, 2002, the date when federal authorities picked him up from the North Carolina DOC. The BOP also awarded Sanders 13 days of jail credit for time spent in custody that was not credited against his state sentence: from August 3, 1994 when he was first arrested until his release on bond on August 11, 1994; one day for March 13, 1994, when he was arrested and released by state authorities; and three days from September 29, 1998 to October 1, 1998, when he was arrested and then released on bond. Sanders' projected release date is April 14, 2010.

The judgment in Sanders' federal criminal case is silent as to the relationship between the federal and state sentences. Therefore, pursuant to 18 U.S.C. § 3584(a), his federal sentence is consecutive to any other sentence. Because the federal court knew about the state sentence and did not expressly impose the federal sentence to run concurrent with the state sentence, BOP authorities did not find it appropriate to grant a nunc pro tunc designation, allowing Sanders to

---

[4] In imposing sentence, the federal judge stated that Sanders was "hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 135 months." (Pet. Ex. F.) The federal judgment order also indicates that Sanders is "remanded to the custody of the United States Marshal." (Pet. Ex. H)

receive federal sentence credit for the time he served on his North Carolina sentence after the federal sentence was imposed.

Sanders claims that he should receive credit for 533 days of presentence jail time that he served in official federal custody between September 14, 1999 and April 2, 2001. He asserts that execution of the federal arrest warrant on September 14, 1999, while he was at the Mecklenburg County Jail, placed him in the primary custody of federal authorities and that he should thus receive credit against his federal sentence for any time he served after that date. He also relies on the fact that the state court judge imposed the state sentence to run concurrently to the federal sentence which had not yet been imposed. Sanders further claims that the BOP should make a nunc pro tunc designation so as to allow him to receive fourteen and a half months of post-sentence credit against his federal sentence while he served his concurrent state sentence, between April 2, 2001, and June 25, 2002.[5] Upon review of the records, the court concludes that Sanders is not entitled to any additional credit against his federal term of confinement.

## Discussion

Once the district court has imposed an inmate's federal criminal sentence, the United States Attorney General, through the BOP as that official's delegate, is responsible for calculating the inmate's term of confinement, including determination of when the sentence commences and the appropriate credit to be granted for jail time served before commencement of the federal sentence. See Wilson, 503 U.S. at 334. A challenge to the computation and execution of a sentence, as opposed to its legality, is properly brought under § 2241 in the district

---

[5] Sanders presents a letter, dated September 11, 2002, from Shirley L. Fulton, the judge who sentenced Sanders on the state drug charges. Judge Fulton states:
> I informed Mr. Sanders and his attorney . . . that I would not oppose his North Carolina prison sentence running concurrently with any federal sentence he received subsequently.
> . . . If the Bureau of Prisons is willing to designate the NC Department of Corrections as the place for concurrent service of Mr. Sanders' federal sentence, and to give him credit for the time spent in the NC DOC, it would be consistent with what I told Mr. Sanders and his attorney, and I would not oppose such a designation.

(Pet. Ex. B.) Sanders also presents a letter, dated May 13, 2002, from the North Carolina Prisoner Legal Services, asking that the BOP designate the NCDOC as the place for concurrent service of his federal sentence, pursuant to 18 U.S.C. § 3621(b). (Pet. Ex. C.)

- 4 -

Case 7:09-cv-00026-GEC-mfu Document 18 Filed 06/30/09 Page 4 of 10 Pageid#: 226

of confinement rather than in the sentencing court. See, e.g., United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989) (finding that § 2241 petition is proper remedy for seeking credit against sentence for time served before trial).

When an inmate has sentences imposed by federal and state authorities, as a matter of comity, the sovereign that arrested him first acquires and maintains primary jurisdiction over him until the sentence imposed by that sovereign has been satisfied. United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998) (restating this principle of primary jurisdiction as set out in Ponzi v. Fessenden, 258 U.S. 254, 260 (1922)). As a general rule, "the first sovereign to arrest an offender has priority of jurisdiction over him for trial, sentencing, and incarceration," and that primary "jurisdiction continues until the first sovereign relinquishes its priority by, for example, bail release, dismissal of the state charges, parole release, or expiration of the sentence" United States v. Smith, 812 F. Supp. 368, 371 (E.D. N.Y. 1993) (citations omitted). Where a state has primary jurisdiction over the defendant, issuance of a detainer or a writ of habeas corpus ad prosequendum by federal authorities does not change the defendant's primary jurisdiction status. Thomas v. Whalen, 962 F.2d 358, 358-60 (4th Cir. 1992). A writ of habeas corpus ad prosequendum specifically recognizes the state's primary jurisdiction, the intention of the federal authorities to "borrow" the defendant for court proceedings, and their obligation to return the defendant to state custody to complete his state sentence. Id. at 358 n.3 (citing other cases).

Dicta in Whalen suggests that state prison officials' accidental release of an inmate to the physical custody of federal authorities has no effect on the primary jurisdiction which rests with the sovereign that first arrested that inmate. Id. at 362 n. 7 ("mere subordinate administrative officials such as the state sheriff and federal marshal may not bind their respective sovereigns as to which sovereign shall, as a matter of comity, have primary jurisdiction") (internal quotations omitted). In any event, when federal authorities have obtained primary jurisdiction over a defendant, they may yield "that superior jurisdictional right" by returning the defendant to state authorities for prosecution and service of a state prison sentence without challenge. Id.

- 5 -

A federal sentence commences "on the date when the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Where the state has primary custody over the defendant, the federal sentence may commence "only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Evans, 159 F.3d at 912. One exception to this rule exists: "when a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the [BOP] agrees to designate the state facility for service of the federal sentence" under 18 U.S.C. § 3621(b). Id. at 911-12. At the discretion of the BOP, a designation under § 3621(b) may be granted nunc pro tunc, allowing a federal sentence to be commenced the date it was imposed and allowing the inmate credit against that federal sentence for time when he was also serving his state sentence. While a concurrent state sentence is one factor that the BOP must consider under § 3621(b), the state court's intent is not binding on federal courts or the BOP. See, e.g., Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990). Finally, a defendant is not entitled to credit against a federal criminal sentence for any period of time served in "official detention" prior to the "date the sentence commences" if that time has been credited against another sentence. See § 3585(b); Wilson, 503 U.S. at 337.

### A. Primary Jurisdiction

It is undisputed that federal authorities in South Carolina acquired primary jurisdiction over Sanders in August 1994, when they initially arrested him. They relinquished this priority, however, when they granted him release on bond. Five years later, state authorities in North Carolina acquired primary jurisdiction over Sanders when they arrested him in January 1999, convicted him and sentenced him on September 1, 1999.

Then, human error entered the picture. In apparent ignorance of the priority jurisdiction maintained by North Carolina, the USMS mistakenly executed an arrest warrant against Sanders on September 14, 1999, while he was incarcerated at the Mecklenburg County Jail awaiting transport to an NCDOC prison facility, and jail officials mistakenly released Sanders on the basis

- 6 -

of the warrant into the physical custody of the USMS.[6] These errors by subordinate officials, however, arguably had no effect in altering the primary jurisdiction status that the state acquired through the January 1999 arrest as a matter of comity between the separate sovereigns of North Carolina and the United States. Moreover, even if the federal "arrest" of Sanders at the state's jail facility qualified as a triggering event for an exchange of primary jurisdiction from state to federal authorities, the federal court then voluntarily relinquished that superior jurisdictional right over Sanders by issuing the writ of habeas corpus ad prosequendum. The writ acknowledged nunc pro tunc the priority jurisdiction of North Carolina and the federal authorities' intention to return Sanders to the state upon completion of the federal court proceedings.[7]

Moreover, it is clear that in computing Sanders' state criminal sentence, the state considered him to have remained in primary state custody from his arrest in January 1999 until his completion of the state sentence in June 2002. The state court sentenced him to serve a minimum of two years and eleven months in prison. From January 19, 1999, the date of his state arrest, until June 25, 2002, the date of his release to federal custody, totals two years, nine months, and 25 days. Indeed, contrary to his arguments, Sanders' own evidence indicates that he received credit against his state sentence throughout the period when federal authorities had physical custody of him, pursuant to the writ of habeas corpus ad prosequendum, during the federal criminal proceedings (September 14, 1999 through April 18, 2001). (Pet. Resp. Ex. 1, Attach. 8, 12, 13.) (indicating that although Sanders was not received by the NCDOC until June

---

[6] Sanders presents absolutely no evidence that the jail officials' action in releasing him on the arrest warrant was anything more than a misunderstanding of his legal status or that this action represented any intention by state authorities to relinquish priority jurisdiction over Sanders.

[7] Once a federal sentence has commenced, it "must generally be served continuously 'unless interrupted by . . . some fault of the prisoner, and he cannot be required to serve it in installments.'" Binford v. United States, 436 F.3d 1252, 1253 (10th Cir. 2006) (quoting Weekes v. Fleming, 301 F.3d 1175, 1179 (10th Cir. 2002)). The facts of Sanders' case do not support any claim that he was forced to serve either his state or federal sentence in installments. He received state credit continuously for the period between his state arrest and completion of his state sentence. Moreover, because federal authorities did not maintain primary jurisdiction over him until his release from his state sentence, he did not commence his federal sentence until that time.

- 7 -

2001, he received state sentence credit beginning September 1, 1999 when his state sentence was imposed, plus 225 days of presentence credit for the period between his arrest on January 19, 1999 and September 1, 1999). The court thus finds no support for Sanders' assertion that he was in primary federal custody beginning on September 14, 1999.

### B. No Additional Sentence Credit

Sanders is not entitled to receive presentence custody credit for the time served before imposition of the federal sentence on April 2, 2001. Because Sanders remained in primary state custody between January 1999 and April 2, 2001, he received credit against his state sentence for this period and cannot receive prior custody credit for that time against his federal sentence. 18 U.S.C. § 3585(b).

The court also concludes that Sanders is not entitled to credit against his federal sentence for time served between its imposition on April 2, 2001 and his completion of his state sentence on June 25, 2002. In light of North Carolina's priority jurisdiction over Sanders, federal authorities had no right to exact Sanders' federal punishment until he had fulfilled his obligations to the state. Evans, 159 F.3d at 912. The federal sentencing court's statements–in court and on the judgment order itself[8]–remanding Sanders to the custody of the USMS for service of his sentence had no effect on North Carolina's priority jurisdiction. The BOP, not the court, had the authority to determine when Sanders' federal term of confinement could commence. Wilson, 503 U.S. at 334 (noting that at sentencing, the court "only could have speculated about the amount of time that [the defendant] would spend in detention prior to the commencement of his sentence; the court did not know when the state-court proceedings would end or when the federal authorities would take [the defendant] into custody"). Moreover, the state court's imposition of its sentence as "concurrent" did not require federal authorities to give Sanders federal sentence credit for any time he served in state prison. State prison authorities could have effectuated the

---

[8] See, supra, Footnote 4.

concurrent nature of Sanders' state sentence by relinquishing him to federal authorities earlier for service of his federal sentence and designating the federal prison facility as the place where he would serve the remainder of his state sentence. However, the state judge's pronouncement of the concurrent sentence did not compel federal authorities to undertake such steps on Sanders' behalf.

Finally, Sanders is not entitled to a nunc pro tunc designation under § 3621(b). The record reflects that the BOP considered his request for such a designation and denied it because the federal sentencing judge did not run the federal sentence concurrent to the already imposed state sentence. The discretion to designate the place of federal confinement rests with the BOP under § 3621, not with the court.

## Conclusion

For the stated reasons, the court concludes that Sanders is not entitled to relief under § 2241. He has proven no ground on which his federal term of confinement has been wrongfully computed.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

- 9 -

Case 7:09-cv-00026-GEC-mfu   Document 18   Filed 06/30/09   Page 9 of 10   Pageid#: 231

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and counsel of record for the respondent.

ENTER: This 30th day of June, 2009.

/s/ Paul Conrad
United States District Judge